Good morning, Your Honors. Paul Kelly on behalf of the defendant and counterclaimant, Moshe Schnapp. Why are you appealing? You are now remanded to the Los Angeles Superior Court. As I see it, the ruling from the form of nonconvenience of the district court is not on the merits. Your counterclaim is a mandatory counterclaim under California procedure. In all probability, you will be able to file it as an amended counterclaim and you will proceed to get exactly what you want. Your Honor, if I could respond to that. We're appealing because my concern is that when this case goes back to the district, to the state court, that rather than saying, oh, yes, you can file your counterclaim again, they will say your counterclaim has been dismissed and that will be it. But it was dismissed on federal forum nonconvenience grounds. The California courts have perhaps a different view of what a convenient forum is. And, Your Honor, I would agree. I think that in this particular instance, they would have a very different view of what a convenient forum is because this issue is going to be before them as an affirmative defense in any event. Okay. So I agree with you, Your Honor, but I don't really know that that's how it's going to come out in the state court. And if it doesn't come out in the state court that way, then I will have waived all my rights. I see. So you're really a preventive appellant. Your Honor, in a certain respect, I am, because all I really want is to have my case where it originally was, which was in the state court, and I have a counterclaim that I can pursue there, and the state court can do what it wants to do with it. However, from our standpoint, this case was never properly in the district court. The remand was granted originally. It should have stayed. And more importantly, this court came back and said, here's what we want you to do to determine exactly how this is going to go. Tell us, is Discount Bank a foreign sovereign? If it's a foreign sovereign, does it have a specific, a special right to remove different from any other because it's a plaintiff and it's still going to get to remove? And finally, if that occurs, Your Honor, are they immune from suit? Counsel, I don't understand something here before you get to the sovereign immunity issue. What I don't understand is, if you're right, why can't anyone with a judgment against them in a foreign country just pick up themselves and their assets, go to California and be home free and not have to pay their debts? But, Your Honor, I'm not saying they're home free and they don't have to pay their debt. Okay? There's an enforcement proceeding. But you had your chance to litigate your counterclaim in Israel. Schnapp was in court. He was in Israel. It's where he lived. He's a citizen of Israel. They have courts, basically the British model. And it was right there, and the only reason it didn't get litigated on the merits is that he fled. I respectfully disagree that that's really the case. Isn't that what the judgment there said? That is not what the judgment there said, Your Honor. And if I could, there's two judgments that matter. The first one is the second summary hypo proceeding. And the second summary hypo proceeding, which is one of the orders, the judgments of the Israeli court that they're trying to enforce, what occurs there is they have a special proceeding, and whether or not you can counterclaim in the special proceeding is a matter of discretion. Judge Gershon issues an order in that case and says, I'm going to exercise my discretion and say, you can't raise your counterclaim in this summary proceeding. However, that doesn't bar you from raising it elsewhere. That's the first thing, Your Honor. Your Honor, the decision that has to do with … I'm looking at the hypo decision. It looks to me as though in hypo he said, first of all, the set-off is raised too vaguely and indefinitely to be litigated, and second, it's been waived in Schnapp's settlement agreement. And I think the outcome of that case, Your Honor, was that we retained the right to bring that … I think you went to the Israel Supreme Court, and I've got their decision here. It looks like you lost. I apologize, Your Honor, for interrupting. In the … the Israeli Supreme Court decision, Your Honor, was a different issue. The issue there had to do with whether Mr. Schnapp had been properly served with those judgments after he had left. It says in paragraph 11, as we see, the Respondent suddenly left the country during a hearing of the actions against him. He refrained from notifying the courts of his new domicile and even refrained from giving an updated address for service of process on his behalf. Your Honor, but that had to do with the service issue. Your Honor, your question had to do with the merits of his … Yes. I can't figure out how a foreign judgment creditor … Debt on a judgment is usually a very simple action, and there are no counterclaims arising from the way the debt was incurred, because it all could have been litigated when the judgment was being arrived at. And that looks like the case here, and I don't see why, if it isn't, you don't have a situation where a foreign judgment creditor is simply helpless to collect what's owed to him if the debtor flees to California with his assets. That's my concern. Okay. Your Honor, if I could just refer you to the record ER 457 and 458, paragraphs 22 through 24. In ER 754 — 744, excuse me, 745, the Haifa District Court denied permission to defend the action, but expressly stated that no determination or decision was made to the merits of the claim that forms the basis of the cross-complaint, the failure to fulfill a promise by discount bank to fund the acquisition of Grenitte. Your Honor, similarly, Your Honor, when the Supreme Court, the Israeli Supreme Court, years later heard the issue of service, they said the same thing. They expressed no position in relation to the proceedings of the enforcement of the judgment that the bank conducts in the U.S. Your Honor, that's in ER 784. I'm looking at 744 and 745, and I don't see where it says what you say it says. Your Honor. Tell me what to look at. Your Honor, I apologize. I don't have the record in front of me. Paragraph 457 and 458 at 22 through 24, which I believe is the Gershon decision, Your Honor. Okay. So — and, Your Honor, the Supreme Court case, the Israeli Supreme Court case is ER 784. So, Your Honor, I don't think we just are leaving there and that they have no right to enforce a judgment. The Haifa court did not permit us to raise that issue. And expressly said, you can go and raise it elsewhere. He didn't because he left feeling he had a deal. He didn't. That's what it turns out, at least, that he didn't. He thought he did. And that's why he's here. He's not here to flee. He's here to do this. As to the counterclaim issue, Your Honor, you said that — and I realize I only have two minutes, so I'm just going to address this last issue. You said that there is no counterclaim in an enforcement of judgment proceeding. Your Honor, I don't think that's correct. The Bank of Montreal case relied on by the bank in this instance is a case where, under British Columbia law, a default was taken against the judgment debtor. Under British Columbia law, that default was raised judicata as to any claims he could make concerning that debt. We don't have that situation here, Your Honor. All right. I have only a minute and 24 seconds left, so I think that unless there are further questions, I'd like to save some time for rebuttal. Thank you very much. Thank you, Counsel. May it please the Court, Sean Unger on behalf of Israel Discount Bank. The central district's judgment should be affirmed. In a well-thought-out opinion, the central district prudently exercised its discretion in concluding that the judgment debtor's judgment    It was a fraud. It was a fraud. that a claim brought by an Israeli against an Israeli bank regarding an alleged loan negotiated in Israel to be performed. Tell me if I've got this right. There's no authority either way on foreign loan convenience on a counterclaim in the Ninth Circuit? There is no authority either way at the circuit court level. That's correct, Your Honor. There is circuit court authority from the Fourth Circuit and the Seventh Circuit. And given that, and given that the central district relied on at least the Seventh Circuit case, the Fourth Circuit case came afterwards. I saw some dicta, but I didn't see any case directly on point where a case had been removed and then while retaining one part of it, there was a remand or a dismissal on foreign loan convenience grounds on just the counterclaim. That struck me as being very unusual, and I didn't see a case on all fours for that. Well, the Fourth Circuit opinion was a dismissal of a counterclaim. But what I would also suggest to you is you can cobble together some authority. I would concede that there is no Ninth Circuit authority on direct all fours. But there's a case of Security Pacific v. Der Darien in which a case was a foreign sovereign removed. And after the removal, the defendant, the foreign sovereign defendant, was dismissed and the case was then remanded. It's sort of a synergy of foreign nonconvenience analysis. It was sort of odd because the – your client, Israel IDB, had picked the forum in state court and then presumably strategically and then only when the counterclaim was brought do they then remove it so they have a second choice forum where they get a favorable treatment on the forum nonconvenience counterclaim. So that seemed to me somewhat unusual. You're saying you're cobbling together, but there's nothing really that would say the district court was entitled to do that. I would respectfully disagree on – in two regards. First, Israel Discontent Bank didn't choose the forum. It litigated its claim in Israel, got a judgment in Israel, was ready to collect in Israel, and then Schnapp in what the Israeli Supreme Court concluded was bad faith, fled the jurisdiction. But you could have chosen the federal court at that point, right, when you went to enforce your judgment? We could not. Diversity jurisdiction wouldn't have existed. As a foreign sovereign suing a foreign citizen who wasn't a legal then resident of the state, there wouldn't have been diversity jurisdiction. Does 1332 say between a foreign citizen and a citizen of a state? Is that your problem and neither one of them is a citizen of a state? Correct. It's an alien, alien situation. Israel Discount Bank availed itself of the federal forum as soon as it possibly could and did so, we believe, prudently and with the rights under 1441D. And the Foreign Sovereign Immunities Act prefers claims brought against foreign states be resolved in federal court. There's a broader body of law. Federal courts have more experience with it. Indeed, the typical restriction on removal being considered against the removing party doesn't apply in the foreign sovereign setting. Right, but the district court avoided our question to it about whether IDB in fact was a foreign sovereign. Why, given the lack of case law specifically on dismissing a counterclaim on those grounds, why shouldn't the district court have just followed our mandate? Well, we think that this case is on four with, on all fours with Senecam in which the court concluded that a difficult jurisdictional question, if the court, the district court, and you don't have to reach the jurisdictional question to conclude that it's difficult, but if the district court concludes that there's a jurisdictional question of first impression, as there was in Senecam, that can be set aside for a non-merits grounds of dismissal, then the district court within its discretion can go to the non-merits grounds for dismissal. And I would respectfully disagree that the court below didn't disregard the mandate. On the earlier appeal, the sequencing of non-merits versus jurisdictional motions wasn't before the court. The earlier appeal was an odd procedural posture in that only appellate jurisdiction and federal subject matter jurisdiction could be presented because it was a sua sponte remand and within the bar of 1447C, you can't get to anything outside of the subject matter jurisdiction question and then the appellate jurisdiction question. You can't even get to the actual substance of the remand order. It was an odd procedural posture. And because of that, the court couldn't and didn't reach the question of sequencing. Senecam comes down four months after the central district looks at Senecam and says it thinks it's a prudent exercise of that discretion. And there is a robust body of law from around the country dismissing counterclaims on foreign non-convenience grounds. Did you have a foreign non-convenience motion pending in the district court before the case came up to us? We had. Yes, Your Honor, we had five. Well, if you did, I don't actually even see why you went through the very lengthy answer that you just did. Because we said the last time the district court is ordered to reinstate all motions. And if you had that motion pending, there you are. Well, why are we doing all this talking? I agree. Is that true? You had a. We did. The sequence was that all of the motions were filed, including Schnapp's motion to remand, and no oppositions have been filed. The central district sui sponte vacated all pending motions and on its own authority remanded. This court concluded that was an error. I know Senecam came down later. Correct. So it makes your job a lot easier, but I don't actually understand why we even need to tangle with it. I think that's correct. I think that Senecam is a discretionary rule. I think the mandate permitted and under this court's rule of mandate, jurisprudence, the central district was free to reach questions within its mandate. Didn't Senecam, they dismissed the entire case. It wasn't just a piece of the case. Correct. That is correct. But there is a body of law from around the country that concludes a forum that counterclaims can be dismissed on forum nonconvenience grounds. I will admit to the court that it has not reached this court and there isn't a published opinion one way or the other on it. But what happened if the whole case was dismissed? Would you be able would the bank be able to get its money? No. Schnapp is no longer in Israel. So if the whole case were if. If Schnapp counterclaims against the bank and it's dismissed for forum nonconvenience, but instead of just the counterclaim being dismissed, the whole action is. Then the bank is barred from suing again, either in federal or state court for dead on a judgment. The bank would not be barred, but it would face the Hobbesian choice of having to litigate a claim thousands of miles away from where it arose. Well, dead on a judgment, you litigate it where the debtor is. I don't understand what's Hobbesian. I think you mean Hobsons. But I don't actually see the problem. You go where the debtor and the money are. That's correct, Your Honor. But what I'm interested in is not whether, oh, so sad, we have to litigate that on a judgment where the debt and the money are. That doesn't strike me as very sad. What strikes me as sad is if you can't get the money that you wrote. The question that Israel Discount Bank would have to face is whether or not if the whole thing was dismissed on forum nonconvenience and then it sought to collect judgment again, whether it would be right back in the situation where it would be faced with a counterclaim. That's the bank's concern. It doesn't want to have to litigate. Well, it's going to get faced with a counterclaim no matter what, and the only question will be whether the counterclaim can be advanced. Correct. And you will then be asserting that it's barred by res judicata, that it's collaterally a stop, that it doesn't state a claim upon which relief can be granted because it's dead on a judgment, all these other things. You still haven't really answered my question. If we were to say the district court should have dismissed the whole thing on forum nonconvenience, would that mean when it gets back to California State Court, when the bank sues again in California, that the bank is barred either by res judicata or because there's been a determination of the case or because the forum nonconvenience determination collaterally stops the bank from saying, no, no, no, California is not an inconvenient forum after all. I'm sorry. I think I understand your question. The case is about whether you can get your, what is it, $4 million or something like that? It's quite a bit more now since the lapse of time and the interest has been running. But there is a question, at least I see my time has run to answer the question. Please do. There is a question of whether or not forum nonconvenience is res judicata. And this, I think, also gets to Judge Bea's question, which is. Yes, it does. The forum nonconvenience dismissal on Schnapp's claim would be res judicata in the state court, assuming that the judgment is upheld now. And if this court were to reach further and say that the central district should have been forum nonconvenience as to the whole. Why would it be res judicata? California may have different concepts of forum nonconvenience than the Federal system has. Well, we look at the Thompson case and they seem to indicate that the Federal system is more favorable to dismissing cases on forum nonconvenience grounds. Yes, Your Honor, but it's the same, it's the same claim. It would be brought in the same case. And because it would be the same flow of the case, it would have the same effect, just like any case that gets removed and then subsequently remanded after the loss of Federal jurisdiction. Well, if we had some pleading rule, which we do, in Bell Labs v. Twombly, which is more strict than the State pleading rule, and we dismiss on the grounds we haven't stated cause of action, and the statute hasn't run, and there's jurisdiction in the State court, that's certainly not a determination on the merits. That dismissal would be without prejudice. For that to be, for the claim to arise in State court, it would have to be a dismissal without prejudice. Here it's dismissal with prejudice as to the venue question on the forum nonconvenience dismissal. On the Federal concept of forum nonconvenience. But it would be in the same claim, in the same case. And just like you remove any case. That's something the State court is going to have to determine anyway. Thank you. Thank you, counsel. Rebuttal. Yes, Your Honor. Your Honor, the one thing I would like to address is the signicam and the mandate issue. First of all, I agree with Mr. Unger that at the time of the prior decision of the Ninth Circuit Court of Appeals, they did have a forum nonconvenience motion pending. I don't think, however, that that eliminates the question. The mandate of this Court was really specific about what you are to do. I'm looking at it. I don't actually understand what you mean. It says the district court is ordered to reinstate all motions. And then, Your Honor, if I may interrupt, Your Honor. Go ahead. It provides a three-step process of what to do. It says accept full briefing and carry out fact-finding necessary to rule on a pending motion. It says specifically the district court shall determine whether IDB qualifies as a foreign sovereign. And if so, whether IDB as a counterclaim defendant may remove the entire action to Federal court. And, Your Honor, I think when you have that specific direction, that's really the direction the court wants you to take. Now, whether or not SINICAM is a dramatic change in law or a change, a dramatic change in the legal landscape, as those cases talk about that allow you to stray from the mandate, I think not. Do you think the district court had to go through those three questions? I do, Your Honor. Well, unless, Your Honor, the first two questions say, if you end at question number one and they're not a foreign sovereign instrumentality, then you don't have to get to two and three. I can see the sense of your reading. We say decide if they're a foreign sovereign and decide whether they can remove the whole thing because they are, and then decide whether they're entitled to immunity. I can see how you can read it to say decide those three things. But once SINICAM comes down and says you don't have to decide all the other stuff if you decide foreign nonconvenience, it's a pretty analogous case. I don't understand why that wouldn't be something that supersedes the district court's duty to decide those three questions. Your Honor, I realize I'm out of time, and I'll just respond to this very quickly. Go ahead, Your Honor. First of all, Your Honor, SINICAM doesn't change the legal landscape. We already have RORGAS. RORGAS is a non-merit dismissal case, personal jurisdiction. It says you can make that determination before you make the determination of subject matter jurisdiction. That's the issue here. That that was already teed up for the district court is not in dispute. So when this case came to the Ninth Circuit, the Ninth Circuit could have said to them, hey, if you can get out on foreign nonconvenience, do it. But they didn't, Your Honor. They gave a specific thing that we want you to determine your subject matter jurisdiction in this case. Your Honor, the last reason why I don't think that SINICAM comes up on an analogous fact pattern is because in SINICAM, the difficult jurisdictional issue for the court, first of all, it was a personal jurisdiction issue. But secondly, Your Honor, it was a case that was fact-intensive. It was going to be discovery, laborious discovery of the facts. Here, Your Honor, what we have is we have an interpretation of law. Okay? The facts have been presented. Somebody is going to decide them the way they decide them. But there's not a lot of work to be left on the facts. And really, it's just a question of time. You have not a lot of work to do based on the counterclaim facts? No. Excuse me. Not on the counterclaim facts. On the jurisdictional issue. Okay? I'm not going to say on the subject matter jurisdictional issue, because that's what the court in SINICAM was saying. We have a difficult factual question here. It didn't say, oh, if you have an issue of law, you can just pass that by. It said if you have a difficult factual issue, the province of courts is to determine issues of law. That's what they do. Okay. Thank you, counsel. Thank you very much, Your Honor. The court is adjourned.
judges: Kleinfeld, Bea, Ikuta